JOHN LIVELY *v.* STATE OF ARKANSAS

5697                                            479 S.W. 2d 553

Opinion delivered May 1, 1972

*Harold L. Hall,* for appellant.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends that the evidence was insufficient to sustain his conviction of keeping a gambling house. He also asserts that evidence obtained by search of premises known as "Hav-a-Stein" should have been suppressed and the warrant quashed. We will consider these contentions in reverse of the order in which they are stated.

Appellant argues that the only evidence before the magistrate issuing the warrant is the facts stated in the affidavit, and that these facts do not state probable cause for the issuance of the search warrant for betting slips, race forms, scratch sheets, envelopes containing money, cash

register, cash drawer, money used in betting operation and other gaming equipment and gaming paraphernalia in the Hav-a-Stein Tavern occupied by "John," 5'8", 150 pounds, approximately 35 years old, and "Carroll," a white male, 6'1", 180 pounds, dark hair, approximately 40 years of age, at 4607 Asher Avenue, Little Rock, Pulaski County, Arkansas. The affidavit read:

> We, R. L. Miller and R. C. Haggard, do solemnly swear that there are reasonable grounds to believe, and upon probable cause we do believe that gaming is being carried on and gaming equipment is concealed in the Hav-a-Stein Tavern, located at 4607 Asher Avenue, Little Rock, Pulaski County, Arkansas, and that gaming equipment and paraphernalia, to-wit: betting slips, race forms, scratch sheets, envelopes containing money, cash register, and cash drawer, are concealed on the premises occupied by the Hav-a-Stein Tavern, 4607 Asher Avenue, Little Rock, Pulaski County, Arkansas, in the State and County aforesaid and pray a warrant issue from said Court directing the search of said Hav-a-Stein Tavern and the seizure of the gaming equipment, gaming paraphernalia, or personal property including money, used in connection with said gaming.
> Facts constituting probable cause:
> 1. The activities and observations set forth in the following paragraph took place on the respective dates as shown at the Hav-a-Stein Tavern, 5607 Asher Avenue, Little Rock, Pulaski County, Arkansas:
>
> On 3 occasions, to-wit: March 15, 17 and 17, [1] 1971, affiants placed bets on horses racing at Oaklawn Park, Hot Springs, Arkansas, observed betting slips being filled out and placed between the cash register and the wall in said establishment known as the Hav-a-Stein Tavern, and observed racing forms and

---

[1] There was testimony that this date was a typographical error and that it should have been "18." The result we reach in this case would not be different if this date did not appear in the affidavit at all. (footnote ours.)

other gaming paraphernalia used in the placing of said bets at said establishment.

On March 16, 1971, affiants received a pay off of $4.20 on a $2.00 bet placed on March 15, 1971, on the number 6 horse, "She-Calachan," running in the 8th race at Oaklawn Park, Hot Springs, Arkansas.

All the bets placed were with a white male named "JOHN," 5'8", 150 lbs, approximately 35 years old, and bets were collected from a bartender known to affiants as "CARROLL" last name unknown, a white male, 6'1", 180 lbs, dark hair, approximately 40 years of age.

Appellant's contention is that there was nothing to show that gambling was occurring on March 20, 1971, the date of the affidavit and of the issuance of the warrant, or at any time after March 17, 1971. It was not essential to the validity of the search warrant that such a showing be made. It is only required that the affidavit to show probable cause relate facts so near in point of time that a belief on the part of the issuing magistrate that the conditions described in the affidavit still prevail is not unreasonable. *Waggener* v. *McCanless*, 183 Tenn. 258, 191 S.W. 2d 551, 162 A.L.R. 1402 (1946); *Neely* v. *Commonwealth*, 269 Ky. 451, 107 S.W. 2d 305 (1937). It would be impossible to state any hard and fast rule to govern the element of remoteness in the issuance of a search warrant. Too much depends upon the circumstances of the particular case and the context of the evidence of probable cause submitted to the magistrate in which the time of the acts made the basis of the application is stated. It appears that the weight of authority supports the general rule above stated and that lapses as long as three weeks have been held not to invalidate a search warrant. See Annot., 162 A.L.R. 1406. We cannot say that the municipal judge's finding that probable cause existed for issuance of the warrant on March 20 was unreasonable.

It would serve no useful purpose to narrate the evidence in full detail in this case. We find it sufficient to sustain

the jury verdict. Viewed in the light most favorable to the verdict, it shows:

Officers R. C. Haggard and Ray C. Miller, doing undercover work for the Little Rock Police Department, went, on March 15, to the Hav-a-Stein with one Mike Bale, who introduced them to Lively. They gave money to Bale, who in turn gave it to Lively, to bet on a horse. Lively recorded the name and went across the street to use a pay telephone. Upon return, Lively reported that the bets were placed and put the notation and the money in a cigar box next to the cash register. When the undercover agents returned on March 16 to collect on their bets, the bartender, Carroll Lester, informed them that Bale had collected the money. Another bet was placed by Miller, and the officers observed Lively go into a telephone booth, after taking the money for the wager and recording the number of the horse in a race at Hot Springs. They saw Lively place a call and then return and state that the bet was placed. Lively then put a notation of the wager in the cigar box by the cash register. On March 17, Carroll Lester reached into this cigar box for $4.80 which he paid Miller. On March 18, Miller placed two bets with Lively, who recorded them on paper, put the money in his pocket, and went to the pay phone, returned and advised that the "bets were in." Whenever the officers were in the tavern, three other persons there shared racing forms and scratch sheets with them and exchanged information about horses.

Lively claimed that he did not place the bets by telephone, but that he had taken the money and given it to a friend named Joe Schogudy, who had a business location across the street, to take to the track to be wagered there. Schogudy did not testify. Lively testified that he did not profit from the bets, and that, while he had taken money from people and placed their bets at the track, he had never engaged in any gambling activity in his place of business. He points out that there were two telephones in his place so that it was unnecessary for him to cross the street to use a pay phone in placing the bets. He also argues that there was no evidence that anyone other than

the police undercover agents placed bets and that no other witness testified that gambling activity was being conducted at the Hav-a-Stein.

The credibility of the witnesses and the weight to be given the evidence were matters to be determined by the jury. We find substantial evidence to support the verdict.

The judgment is affirmed.