**Hubert W. BARRETT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 29, 1973.

Albert C. Hawes, Covington, for appellant.

Ed W. Hancock, Atty. Gen., Thomas R. Emerson, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

A Campbell County jury found Hubert Barrett guilty of "felony murder" and fixed his punishment at life imprisonment.

Hubert appeals asserting that incompetent testimony was introduced to show cause of death, that the "accomplice instruction" was erroneous, and that the Commonwealth did not introduce sufficient corroborative testimony to warrant submission of the case to the jury.

After midnight, October 2, 1971, Hubert, Walter Jones, and Elizabeth Shields in company with three other people entered the J & G Cafe in Brent, Kentucky. The bartender, Robert Barrett (a relative of Hubert) and the victim, Kay Sester, were the only people in the cafe. Kay Sester had been in the cafe all evening and was intoxicated. According to Walter Jones, Hubert said "that guy has some money"; so he and Hubert devised a plan to rob Sester. Both Walter and Hubert, according to Elizabeth Shields' testimony, approached her with a suggestion that she take Sester into a back room and seduce him, during the course of which Hubert and Walter would seize Sester's pants, presumably removed for the occasion, and steal his money. Elizabeth testified that after going into the back room with Hubert and Sester, Hubert left, and she warned Sester he was to be robbed. Here the facts become confused. According to Elizabeth, Walter, who was already in the back room, grappled with Sester. In the struggle, Walter fired a shot, then Hubert came into the room and took the gun from Walter and said "if you aren't going to kill him, I'll kill him." Another struggle ensued, Hubert "hassling" Sester, and another shot. Sester fell through the doorway with a bullet wound in the back of his head. Walter testified that he, Hubert, and Sester were struggling, Walter's gun fired, Sester ran toward the door, Hubert shouted, "Walter kill the punk!" Walter fired again, and Sester fell to the floor.

Sester died shortly after being taken to the hospital. Hubert and the others fled the scene. After hiding out for some days, Hubert surrendered to the police. Hubert, Walter Jones, and Elizabeth Shields were indicted for murder. Walter Jones and Elizabeth Shields entered guilty pleas to the charge.

■ During the course of the trial, the coroner, a medical doctor, testified for the Commonwealth that the cause of death was a gunshot wound in the back of the head. On cross-examination, he testified that while he did examine the body, he was not present during the entire autopsy performed by a pathologist and based his opinion at least partially on the report of the pathologist. He did testify that the deceased was a young man; that there was no visible cause of death other than the gunshot wound in the head; and that Sester died shortly after being taken to the hospital. We conclude that the testimony of the doctor furnished sufficient competent medical testimony to establish cause of death. This is particularly so where the facts are such that a layman of average intelligence could reasonably conclude that the described injury caused death. Caine v. Commonwealth, Ky., 491 S.W.3d 824 (1973).

■ The "accomplice" instruction given by the trial court was in the exact language of the form in § 946, Stanley's *Instructions to Juries,* and in the language of RCr 9.62 approved by this court in cases too numerous to cite. Hubert argues that his proffered additional instruction would have further clarified the issue for the jury. In addition to being explanatory, the proffered instruction would require "corroborative evidence of such a quality and character as tends to prove guilt." We conclude that the proffered instruction was properly rejected and that the giving of the instruction would be an unacceptable extension of RCr 9.62.

■ Hubert denies any complicity in the plan to rob Sester and argues that the corroborative testimony was not sufficient to take the case to the jury. Doris Harvey, one of the other persons who entered the bar with Hubert and who was not connected with the crime, testified that Hubert,

Walter, and Elizabeth were down at one end of the bar together; that she did not observe the procession to the back room or hear the struggle, only that she heard the shots; that she did not see Hubert in the barroom at that time; that she and her companion rushed to the door; and that Hubert came up behind them and left in the car with them. She testified Hubert later stated that "Walter had shot the gun but the guy kept coming so he took the gun and he shot him." Hubert argues this testimony is not corroborative because it contradicts Walter Jones' testimony that he shot Sester. Hubert overlooks the implication of this statement. It places him in the back room with Walter Jones, Elizabeth Shields, and Kay Sester, the victim. We are not attempting here to unravel the confusing testimony as to who fired the fatal shot. This testimony alone corroborates the testimony of Walter and Elizabeth that Hubert participated in the attempt to rob Sester, and taken together with the testimony that Doris did not see Hubert in the barroom when the shots were fired and the further admission by Hubert on cross-examination that he told the authorities when he surrendered that Robert Barrett, the bartender, told him Sester was "loaded," speaking of money, is sufficient corroboration to tend to connect Hubert with the crime. Hubert attempted to explain away this admission with the assertion that Robert Barrett was speaking to Walter, but the jury was entitled to draw the inferences, which it did from all the corroborative testimony.

We conclude that the corroborative testimony was sufficient to tend to connect Hubert with the commission of the offense. Hunt v. Commonwealth, Ky., 466 S.W.2d 957 (1971) and Brown v. Commonwealth, Ky., 440 S.W.2d 520 (1969). The case was properly submitted to the jury.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.